```
            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF KANSAS
```

KIMBERLY ANN RUDISEL,

        Plaintiff,

vs.                                          Case No. 16-2679-SAC

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I.  General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984

---

[1] On January 20, 2017, Nancy A. Berryhill replaced Carolyn W. Colvin as Acting Commissioner of Social Security.

(10th Cir. 1994).  Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in

substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform

3

their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis.  Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).  At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy.  Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993).  The Commissioner meets this burden if the decision is supported by substantial evidence.  Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC).  This RFC assessment is used to evaluate the claim at both step four and step five.  20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II.  History of case

On April 12, 2016, administrative law judge (ALJ) Michael D. Mance issued his decision (R. at 33-41).  Plaintiff alleges that she has been disabled since December 24, 2013 (R. at 33).

Plaintiff is insured for disability insurance benefits through December 31, 2013 (R. at 35). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity from the alleged onset date through the date last insured (R. at 35). At step two, the ALJ found that plaintiff has severe impairments (R. at 35). At step three, the ALJ determined that plaintiff's impairments do not meet or equal a listed impairment (R. at 36). After determining plaintiff's RFC (R. at 37), the ALJ found at step four that plaintiff is able to perform past relevant work as a house cleaner (R. at 40). Therefore, the ALJ concluded that plaintiff was not disabled (R. at 41).

**III. Are the ALJ's RFC findings supported by substantial evidence, specifically, the medical source opinions?**

According to SSR 96-8p, the RFC assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts...and nonmedical evidence." The ALJ must explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved. The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. SSR 96-8p, 1996 WL 374184 at *7. SSR rulings are binding on an ALJ. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530

5

n.9, 110 S. Ct. 885, 891 n.9, 107 L. Ed.2d 967 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

In reaching his RFC determination, an ALJ is permitted, and indeed required, to rely on all of the record evidence, including but not limited to medical opinions in the file. Wells v. Colvin, 727 F.3d 1061, 1071 (10th Cir. 2013). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. See Southard v. Barnhart, 72 Fed. Appx. 781, 784-785 (10th Cir. July 28, 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review; the ALJ is charged with carefully considering all of the relevant evidence and linking his findings to specific evidence. Spicer v. Barnhart, 64 Fed. Appx. 173, 177-178 (10th Cir. May 5, 2003). It is insufficient for the ALJ to only generally discuss the evidence, but fail to relate that evidence to his conclusions. Cruse v. U.S. Dept. of Health & Human Services, 49 F.3d 614, 618 (10th Cir. 1995). When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination. Such bare conclusions are beyond meaningful judicial review.

Brown v. Commissioner of the Social Security Administration, 245 F. Supp.2d 1175, 1187 (D. Kan. 2003).

Plaintiff argues that the ALJ erred in the relative weight he accorded to the opinions of Dr. Foster, a non-examining physician, and Dr. Brooks, plaintiff's treating physician.  The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant.  The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all.  Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004).  When a treating source opinion is inconsistent with the other medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around.  Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.  If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it.  Hamlin v. Barnhart, 365 F.3d 1208,

1215 (10th Cir. 2004). The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. Robinson, 366 F.3d at 1084.

Dr. Foster is a non-examining physician who performed a physical assessment on the plaintiff on January 19, 2015. After reviewing the records, he stated that:

> She clearly has chronic pain in various parts of her body at various times, but there is no imaging to substantiate the cause of her pain. Some djd [degenerative joint disease] of the feet noted but persistent pain not supported by the file. There is insufficient evidence to make an accurate assessment of the claim prior to DLI [date last insured].

(R. at 82). The ALJ noted the findings of Dr. Foster, including her finding that there was no imaging to substantiate the cause of her pain, and assigned "great weight" to her opinions based on the lack of medical evidence in the record (R. at 40).

Plaintiff's treating physician, Dr. Douglas Brooks, has treated plaintiff from the late 1990s through October 2014. He diagnosed low back pain, noting spondylolisthesis at L4-5 and chronic stress fractures of the pars interarticularis at L5-S1 bilaterally. He described her back pain as severe and constant. He noted that she has limited range of motion of the lumbar spine due to pain. He indicated that MRI testing shows findings as he had noted in his diagnosis. He provided a medical source

8

statement dated October 20, 2014. He opined that plaintiff can only stand/walk for 45-60 minutes and sit for 45-60 minutes in a workday (R. at 465-466). The ALJ assigned little weight to his opinions, because, according to the ALJ, Dr. Brooks' own clinical examinations do not support the extreme functional limitations upon which he opined. The ALJ noted that he did not recommend surgery and that the plaintiff had normal musculoskeletal examinations (R. at 39).

   The ALJ limited plaintiff to light work, except that she may occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. She may occasionally stoop, kneel, crouch, and crawl. She must avoid concentrated exposure to unprotected heights and excessive vibrations (R. at 37). The ALJ stated that the RFC assessment is supported by the lack of diagnostic imaging to support the allegations of extreme back and hip pain. The ALJ noted that the physical exams of the musculoskeletal system were normal, including a normal gait. Pain was treated conservatively with pain medication, swimming, and stretching exercises. The ALJ noted that no surgery was recommended (R. at 40).

   As set forth above, the ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources. The ALJ gave great weight to the opinions of Dr.

9

Foster, a non-examining physician, whose opinions are generally entitled to the least weight.  Dr. Foster stated that "there is **_no_** imaging to substantiate the cause of her pain" (R. at 82, emphasis added).  The ALJ mentioned this finding by Dr. Foster; the ALJ then gave great weight to Dr. Foster's findings based on the lack of evidence in the record (R. at 40).  The ALJ further stated that his RFC findings are supported by the lack of diagnostic imaging to support the allegations of extreme back and hip pain (R. at 40).

On October 20, 2014, plaintiff's treating physician, Dr. Brooks, diagnosed low back pain, noting spondylolisthesis at L4-5 and chronic stress fractures of the pars interarticularis at L5-S1 bilaterally.  He described her back pain as severe and constant.  He noted that she has limited range of motion of the lumbar spine due to pain.  **He indicated that MRI [magnetic resonance imaging] shows findings as he had noted in his diagnosis**.  After setting forth his diagnosis, and the basis for that diagnosis, he opined that plaintiff can only stand/walk for 45-60 minutes and sit for 45-60 minutes in a workday (R. at 465-466, emphasis added).

The MRI testing in March 2014[2] showed diffuse lumbar spondylosis.  At L4-5, she had a grade I anterolisthesis of L4

---

[2] Dr. Ryan's medical notes, dated March 17, 2015, state that the MRI films that he reviewed were about 1 year old (R. at 469-470).  Subsequent medical records submitted show that an MRI of the lumbar spine was done on March 26, 2014 (R. at 6-7).

10

on L5, secondary to degenerative facet arthropathy (R. at 469). Dr. Ryan indicated that the clinical exam was normal, so that she did not have any focal weakness or reflex asymmetry, but is dealing primarily with pain.[3]  He further indicated that there did not appear to be surgical structural lesion that would be correctable by any type of surgical intervention (R. at 469). On March 26, 2014, Dr. Wilson reviewed the MRI test results (R. at 6-8).  He found grade one spondylolisthesis at L4-5 with some pressure on the nerves on each side and some chronic stress fractures at the L5-S1 level of the pars interarticularis bilaterally (R. at 8).  These are the very findings cited by Dr. Brooks in support of his diagnosis of the plaintiff in October 2014.

In the case of Baca v. Department of Health and Human Services, 5 F.3d 476, 479 (10th Cir. 1993), the court held that evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments which could reasonably be presumed to have been present and to have imposed limitations as of the earning requirement date (in Baca,

---

[3] Although the ALJ noted that Dr. Ryan stated that the clinical exam was normal, with no focal weakness or reflex asymmetry, the ALJ failed to mention that Dr. Ryan then stated that plaintiff is primarily dealing with pain (R. at 40, 469).

11

the court held that medical records within fourteen months of the expiration of claimant's insured status should have been considered; 5 F. 3d at 479). Thus, the MRI testing in March 2014, only 3 months after the expiration of plaintiff's insured status, is pertinent evidence that should be considered to disclose the severity and continuity of impairments that existed and which could have imposed limitations before the expiration of plaintiff's insured status.

The ALJ gave great weight to a non-examining medical source who stated that there is no imaging to substantiate the cause of her pain. The ALJ's own opinion noted the statement of Dr. Foster that there was no imaging to substantiate the cause of her pain. The ALJ concluded that his RFC findings were supported by the lack of diagnostic imaging to support the allegations of extreme back and hip pain.

The ALJ discounted the opinions of Dr. Brooks, plaintiff's treating physician, despite the fact that Dr. Brooks made his diagnosis based on MRI test results in March 2014. The medical record obviously underwent material changes since Dr. Foster indicated in January 2015 that there was no imaging to substantiate the cause of plaintiff's pain. As was the case in Chapo v. Astrue, 582 F.3d 1285, 1292 (10th Cir. 2012), the ALJ failed to account for material objective evidence that developed

12

after the opinion by Dr. Foster to which the ALJ accorded great weight.

In discounting the opinions of Dr. Brooks, the ALJ stated that Dr. Brooks' clinical examinations did not support the extreme functional limitations upon which he opined, noting that Dr. Brooks did not recommend surgery and the plaintiff had normal musculoskeletal examinations (R. at 39). There are a number of problems with this reasoning. First, the ALJ relies on records from 2012, which predate the MRI imaging results. Second, a review of those medical records from Dr. Brooks in 2012, indicate that plaintiff was receiving medication for muscle spasms (R. at 272, 274, 276, 278). They also state:

> "Musculoskeletal: Negative for: joint pain, joint redness, joint swelling muscle pain. Positive for low back pain – chronic.

(R. at 273, 275, 277, 278). Thus, although some of the musculoskeletal signs were negative, they were positive for low back pain, chronic. Thus, the musculoskeletal examination was not entirely "normal." The ALJ erred by misstating the record.[4]

Finally, the ALJ relied on the fact that Dr. Brooks did not recommend surgery to discount his opinions regarding the severity of plaintiff's pain, or her physical limitations due to that pain. In fact, Dr. Ryan indicated that plaintiff's

---

[4] The ALJ also noted that plaintiff had a normal gait (R. at 40). The records of Dr. Brooks show, under neurology, that plaintiff was negative for gait abnormality, headaches, memory changes, numbness, syncope, and tremors, but was positive for dizziness (R. at 273, 275, 277). On remand, all of these findings should be taken into consideration by the ALJ.

condition was not correctable by any type of surgical intervention (R. at 469).  In the case of Hamlin v. Barnhart, 365 F.3d 1208, 1221 (10th Cir. 2004), the ALJ noted that Mr. Hamlin did not require an assistive device for his neck.  The court held that there is no evidence that any physician recommended such a device or suggested that one would have provided any pain relief.  An ALJ is not free to substitute his own medical opinion for that of a disability claimant's treating doctors.  As was the case in Hamlin, no physician suggested that surgery would provide any pain relief for the plaintiff in the case before the court.  Therefore, the ALJ erred by relying on the fact that surgery was not recommended to discount the opinions of Dr. Brooks.

On the facts of this case, the ALJ erred in his reasons for discounting the opinions of Dr. Brooks, plaintiff's treating physician, and in giving great weight to the opinions of Dr. Foster, a non-examining physician.  Both Dr. Foster and the ALJ rely on the lack of any imaging to substantiate the cause of plaintiff's pain; the ALJ also stated that his RFC assessment was supported by the lack of any imaging to support allegations of extreme pain.  However, subsequent to the report by Dr. Foster, an MRI was performed on the plaintiff.  Dr. Brooks relied on the MRI imaging results in making his diagnosis and rendering his opinions regarding plaintiff's limitations due to

her impairments.  There is no medical opinion evidence disputing the findings of Dr. Brooks based on the MRI imaging results.  Furthermore, the ALJ erred by misstating the clinical examinations of Dr. Brooks from 2012, which in fact did note positive musculoskeletal results for low back pain, chronic.  Finally, the ALJ erred by relying on the fact that Dr. Brooks did not recommend surgery when the medical record did not show that any physician indicated that surgery would provide any pain relief.  In fact, Dr. Ryan stated that although plaintiff is primarily dealing with pain, plaintiff's condition would not be correctable by any type of surgical intervention.  Finally, the ALJ failed to cite to any evidence which clearly supports his RFC findings.[5]  For these reasons, the court finds that the ALJ's RFC findings are not supported by substantial evidence.

**IV. Other issues raised by plaintiff**

Plaintiff also alleges a number of other errors in their brief.  These issues will not be addressed in detail because they may be affected by the ALJ's resolution of the case on remand after the ALJ makes new RFC findings after reevaluating the medical opinion evidence, particularly the opinions of Dr. Brooks, plaintiff's treating physician.  See Robinson v. Barnhart, 366 F.3d 1078, 1085 (10th Cir. 2004).

---

[5] The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and nonmedical evidence.  Wells v. Colvin, 727 F.3d 1061, 1069 (10th Cir. 2013).

At step two, the ALJ found that obesity was a severe impairment (R. at 35). However, the ALJ made no further mention of plaintiff's obesity. Although the court finds no clear error on this issue, on remand the ALJ should discuss and apply SSR 02-1p, a social security ruling governing the evaluation of obesity. The court would note that plaintiff has failed to point to any evidence in the record indicating that plaintiff's obesity resulted in limitations not included in the ALJ's RFC findings. See Arles v. Astrue, 438 Fed. Appx. 735, 740 (10th Cir. Sept. 28, 2011); Warner v. Astrue, 338 Fed. Appx. 748, 751 (10th Cir. July 16, 2009).

In his decision, the ALJ limited plaintiff to light work, without setting forth specific exertional limitations on plaintiff's ability to sit, stand, walk, push or pull. Because this case is being remanded for the reasons set forth above, on remand, the ALJ should identify plaintiff's functional limitations or restrictions and assess her work-related abilities on a function-by-function basis, as set forth in SSR 96-8p, 1996 WL 374184 at *1, 3-4.

In his decision, the ALJ found that plaintiff had no more than mild limitations in concentration, persistence, or pace, and had a non-severe mental impairment (R. at 36). However, a finding of non-severity at step two alone would not support a decision to prepare an RFC assessment omitting any mental

16


restriction.  <u>Wells v. Colvin</u>, 727 F.3d 1061, 1062 (10th Cir. 2013).  In his report, Dr. Brooks noted that the taking of narcotic pain medication resulted in "brain fog" for the plaintiff.  On remand, the ALJ should examine this and other evidence, and possibly consider further medical source examination or consultation, in order to determine if plaintiff has any mental limitations that should be included in plaintiff's RFC.

Finally, plaintiff alleges error in the ALJ's discounting of 3rd party opinions.  The ALJ did consider and address the 3rd party opinions, and the court does not find any clear error by the ALJ in its consideration of those opinions.  However, on remand, the ALJ will need to reconsider their opinions in light of the medical opinions of Dr. Brooks, who based his opinions on MRI testing.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 2nd day of February 2018, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge